AMR CORPORATION and American
Airlines, Inc., Relators,

v.

Hon. Paul ENLOW, Judge 141st District
Court of Tarrant County, Texas,
Respondent.

No. 2–96–109–CV.

Court of Appeals of Texas,
Fort Worth.

Aug. 1, 1996.

Thompson & Knight, John H. Martin, Beverly Ray Burlingame, L. James Berglund, Allison Roseman, Dallas, for relator.

Gray Smith Noteboom, Charles M. Noteboom, Jay K. Gray, Hurst, for real party.

Before RICHARDS, BRIGHAM and HOLMAN, JJ.

## OPINION

RICHARDS, Justice.

In this original proceeding, we must determine if relators AMR Corporation and American Airlines, Inc. are entitled to mandamus relief from the trial court's orders compelling the deposition of their highest-ranking corporate officer and denying their request for a stay of the underlying case. We hold that relators are entitled to mandamus relief on the deposition but not on the stay.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On June 7, 1991, Robert Barber was a passenger on an American Airlines flight from Minneapolis to Dallas–Fort Worth Airport. After his arrival, Barber had a traffic accident in Tarrant County with Todd Miller and Julie Davis, who were riding a motorcycle. Barber was intoxicated.

In 1992, Miller and his parents sued Barber in Tarrant County. After nonsuiting that case, the Millers sued Barber again in March 1993 in Hidalgo County and added AMR Corporation and American Airlines, Inc. (American) as defendants, alleging dramshop negligence in serving alcohol to Barber on the flight. *See* TEX. ALCO. BEV. CODE ANN. § 2.02 (Vernon 1995).[1] The Millers also added Barber's employer, M B Valuation Services, Inc., as a defendant. Davis intervened and alleged that American violated state and federal laws and that she had an implied cause of action under FAA regulations.

In June 1993, American removed the case to federal court in McAllen based on federal-question jurisdiction. In August 1993, the federal court denied the plaintiffs' motion to remand the case to state court and transferred venue of the case to federal court in Fort Worth.

American moved for summary judgment on all claims, asserting that the plaintiffs had no federal claims and that their state claims were preempted by federal law. American

---

1. The dramshop statute is the exclusive remedy in Texas law for the negligent service of alcohol to an adult. *Id.* § 2.03.

then settled with Davis, leaving the Millers as the only plaintiffs.

The federal court granted summary judgment for American on the Millers' federal claims but denied summary judgment on the state claims, ruling that they were not preempted by federal law. The federal court also declined to retain the Millers' state claims and dismissed them without prejudice to refiling in state court.

In August 1995, the Millers sued again in Tarrant County, realleging their state claims. Meanwhile, both sides appealed the federal court's ruling to the Fifth Circuit, with American arguing that the federal court erred in holding that the state claims were not preempted and the Millers arguing that the federal court erred in dismissing the federal claims. Oral argument was set in the Fifth Circuit in July 1996, with a decision expected within a few months.

American moved for a stay in the trial court, arguing that if the Fifth Circuit rules that the Millers' state claims are preempted, their suit against American is barred. The trial court denied the stay, and American seeks mandamus relief from that ruling.

■ On the discovery front, the Millers sought the "apex" deposition of Robert Crandall, AMR's president, CEO, and chairman of the board, and American Airlines, Inc.'s CEO and chairman of the board. An apex deposition is the deposition of a corporate officer at the apex of the corporate hierarchy. *Crown Central Petroleum Corp. v. Garcia,* 904 S.W.2d 125, 126 (Tex.1995). The Millers sought Crandall's deposition even though they had already deposed thirteen American employees on their dramshop claim and American's alcohol service policies.

The Millers filed a motion to compel Crandall's deposition, and American filed a motion for protective order with Crandall's affidavit in which he denied having knowledge of relevant facts. The trial court ordered Crandall's deposition, and American also seeks mandamus relief from that ruling.

## STANDARD OF REVIEW

■ In deciding whether a writ of mandamus is appropriate, we recognize that man-

damus will issue only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992). A trial court clearly abuses its discretion when it reaches a decision so arbitrary and unreasonable to amount to a clear and prejudicial error of law. *Id.* at 839.

■ With respect to the resolution of factual issues or matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court unless the trial court could reasonably have reached only one decision and the trial court's decision is shown to be arbitrary and unreasonable. *Id.* at 839–40. Our review is much less deferential with respect to a trial court's determination of the legal principles controlling its ruling because a trial court has no discretion in determining what the law is or applying the law to the facts. *Id.* at 840. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in mandamus. *Id.*

■ A writ of mandamus is the proper vehicle to attack an order granting discovery. *See Tilton v. Moye,* 869 S.W.2d 955, 958 (Tex.1994). In making the determination of whether the trial court abused its discretion, we are mindful that the purpose of discovery is to seek the truth so that disputes may be decided by what the facts reveal, not by what facts are concealed. *Jampole v. Touchy,* 673 S.W.2d 569, 573 (Tex.1984). The discovery rules do not require that the information sought be admissible evidence; it is enough that the information appears reasonably calculated to lead to the discovery of admissible evidence. *Id.; see* TEX.R. CIV. P. 166b(2)(a). But this broad grant is limited by the legitimate interests of the opposing party to avoid harassment or annoyance. *General Motors Corp. v. Lawrence,* 651 S.W.2d 732, 734 (Tex. 1983); *see* TEX.R. CIV. P. 166b(5).

■ Mandamus will issue only where there is no adequate remedy at law, such as a normal appeal. *Walker,* 827 S.W.2d at 840. Appellate courts will not intervene to control incidental trial court rulings when an ade-

quate remedy by appeal exists. *Id.* An appellate remedy is not inadequate merely because it might involve more expense or delay than obtaining a writ of mandamus. *Id.* at 842. A party will not have an adequate remedy by appeal when the appellate court would not be able to cure the trial court's discovery error. *Id.* at 843.

## APEX DEPOSITION

■ American claims that the trial court abused its discretion in ordering Crandall's deposition because the Millers did not meet their burden as set forth in *Garcia.* There the supreme court ruled that an apex deposition cannot be compelled when a high-ranking corporate official does not have unique or superior personal knowledge and when less intrusive discovery methods have not been employed:

> When a party seeks to depose a corporate president or other high level corporate official and that official (or the corporation) files a motion for protective order to prohibit the deposition accompanied by the official's affidavit denying any knowledge of relevant facts, the trial court should first determine whether the party seeking the deposition has arguably shown that the official has any unique or superior personal knowledge of discoverable information. If the party seeking the deposition cannot show that the official has any unique or superior personal knowledge of discoverable information, the trial court should grant the motion for protective order and first require the party seeking the deposition to attempt to obtain the discovery through less intrusive methods. Depending upon the circumstances of the particular case, these methods should include the depositions of lower level employees, the deposition of the corporation itself, and interrogatories and requests for production of documents directed to the corporation. After making a good faith effort to obtain the discovery through less intrusive methods, the party seeking the deposition may attempt to show (1) that there is reasonable indication that the official's deposition is calculated to lead to the discovery of admissible evidence, and (2) that the less

intrusive methods of discovery are unsatisfactory, insufficient or inadequate.

*Garcia,* 904 S.W.2d at 128.

■ American asserts that the Millers did not and cannot show that Crandall has any unique or superior personal knowledge of discoverable information. Crandall says in his affidavit that he does not have personal knowledge of:

- the conduct, actions, or events at issue in this case;
- the conduct or actions of any American Airlines employee on the flight in question;
- the training of any American Airlines flight attendants;
- Barber's history as a passenger on American Airlines, his consumption of alcohol on any American Airlines flight, or his actions after he deplaned from the flight in question;
- any decisions related to, or any procedures for changing, American Airlines policies for serving alcohol on flights or for training flight attendants who serve alcohol; or
- whether any changes to those policies have been made, either before or after the flight in question.

Crandall states that the only relationship between his duties as president, CEO, and chairman of the board and American's alcohol service policies is his supervisory role as president, CEO, and chairman of the board of the two companies. And American asserts that its alcohol service policy is that which is in the FAA regulations and that which its employees uniformly testified to in their depositions in this case: it prohibits service to any passenger who "appears to be intoxicated." 14 C.F.R. § 121.575(a) (1992).

In their motion to compel, the Millers stated that they "wish to depose Robert Crandall in order to determine where the authority lies within the organization for making those [alcohol service and flight attendant training] policy decisions so that Plaintiffs can understand how and why those policy decisions were made and what precisely the policies in place were." The Millers cite the deposition testimony of two lower level American em-

ployees and claim that their testimony reflects that only Crandall has the relevant authority and knowledge of the alcohol service policies.

The record does not support the Millers' claim. A vice president testified that Crandall would have ultimate authority over any policy only because a "chairman of the board has about all the authority he needs on most issues in a business," and the other employee testified that the "buck" probably stops with Crandall. This testimony amounts to nothing more than the simple, obvious recognition that the highest-ranking corporate officer of any corporation has the ultimate responsibility for all corporate decisions and falls far short of the *Garcia* standard. Thus, not only did American provide the trial court with a proper *Garcia* affidavit by Crandall, *see Garcia*, 904 S.W.2d at 126 n. 3, but the Millers failed to show that Crandall has unique or superior personal knowledge of discoverable information, as *Garcia* requires. *See id.* at 128.

American also asserts that the Millers have not shown that they attempted to obtain the discovery through less intrusive methods or that the discovery they have taken is unsatisfactory, insufficient, or inadequate. The Millers have deposed thirteen American employees, several of whom are vice presidents and managing directors. They did not explain to the trial court nor to us why those depositions are unsatisfactory, insufficient, or inadequate. Moreover, the Millers have not even taken the corporation's deposition under rule 200(2) to require American to produce a corporate representative with the most knowledge of American's alcohol policies and training—the exact information that they seek from Crandall. *See* TEX.R. CIV. P. 200(2).

We hold that the trial court abused its discretion in ordering Crandall's deposition.

Further, no adequate remedy by appeal exists on this ruling because an appellate court could not cure the trial court's error in ordering the apex deposition. *Walker*, 827 S.W.2d at 843. Accordingly, we conditionally grant the writ of mandamus, which will issue only if respondent fails to vacate his April 18, 1996 order compelling Crandall to appear for deposition.

**STAY**

American asked the trial court to stay the case until the Fifth Circuit decides whether the Millers' state dramshop claims against American are preempted by federal law. As authority for such a stay, American cites *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1 (Tex.1986) and RESTATEMENT (SECOND) OF JUDGMENTS §§ 13, 16 & cmt. b (1980) ( comment b states that stay should be granted when it will not delay case for lengthy period of time and when there is substantial doubt whether federal court's decisions will be upheld).[2] American's argument is based on its belief that it will prevail in the Fifth Circuit on federal preemption because the only circuit court to address the precise issue ruled in American's favor. *See Harris v. American Airlines, Inc.*, 55 F.3d 1472, 1476 (9th Cir.1995) (holding that claims based on airline's service of alcohol on flight were preempted by federal law).[3]

As set out above, to obtain mandamus relief, generally a party must show an abuse of discretion *and* that it lacks an adequate remedy by appeal. We first address whether American lacks an adequate remedy by appeal.

American's argument is (1) that it should not be put through what may be a meaningless and costly trial if the Fifth Circuit rules that the Millers' state claims are preempted, and (2) that it therefore lacks an adequate

---

**2.** American also cites us to *Texas Farmers Ins. Co. v. Stem*, 927 S.W.2d 76 (Tex.App.—Waco 1996, orig.proceeding), *Permanente Medical Ass'n v. Johnson*, 917 S.W.2d 515 (Tex.App.—Waco 1996, orig. proceeding), and *United States Fire Ins. Co. v. Millard*, 847 S.W.2d 668 (Tex.App.—Houston [1st Dist.] 1993, orig. proceeding), but we find those cases both factually and legally inapposite.

**3.** The record before us does not reflect whether American has asked the trial court in this case to determine if the Millers' state dramshop claims are preempted by federal law. Texas courts are competent to make that determination. *See, e.g., Continental Airlines, Inc. v. Kiefer*, 920 S.W.2d 274 (Tex.1996); *Shupe v. American Airlines, Inc.*, 893 S.W.2d 305 (Tex.App.—Fort Worth 1995), *aff'd*, 920 S.W.2d 274 (Tex.1996).

remedy by appeal. For support American cites *Anderson v. Lykes,* 761 S.W.2d 831 (Tex.App.—Dallas 1988, orig. proceeding), where the Dallas court stated that for an appeal to be an adequate remedy, "the appeal provided for must be competent to afford relief on the very subject matter of the application, equally convenient, beneficial, and effective as mandamus." *Id.* at 834.

This argument directly controverts *Canadian Helicopters Ltd. v. Wittig,* 876 S.W.2d 304 (Tex.1994), where the supreme court specifically noted that in *Walker* it had disapproved of cases such as *Anderson* that require the remedy by appeal be " 'equally convenient, beneficial, and effective as mandamus.' " *Id.* at 306 n. 4 (citing *Walker,* 827 S.W.2d at 842 and quoting *Cleveland v. Ward,* 116 Tex. 1, 285 S.W. 1063, 1068 (1926)). In *Walker* the supreme court plainly stated: "It is not enough to show merely the delay, inconvenience or expense of an appeal." 827 S.W.2d at 843; *see also Hooks v. Fourth Court of Appeals,* 808 S.W.2d 56, 60 (Tex.1991) ("cost or delay of having to go through trial and the appellate process does not make the remedy at law inadequate"). In *Canadian Helicopters* the court expanded on this, stating that even though a trial court makes an erroneous ruling that will result in eventual reversal on appeal, that does not mean there will be a "waste of judicial resources" as that term was used in *Walker. Canadian Helicopters,* 876 S.W.2d at 308 n. 11. "To hold otherwise would mean that virtually any trial court order constituting reversible error would be a proper subject for mandamus review. Such a result is inconsistent with the rule that mandamus is an extraordinary remedy to be used only in limited circumstances." *Id.*

 Instead, the relator must show "the effective denial of a reasonable opportunity to develop the merits of his or her case, so that the trial would be a waste of judicial resources." *Walker,* 827 S.W.2d at 843. This was further explained in *Canadian Helicopters* to mean that the harm caused by the trial court's abuse of discretion must be "irreparable, exceeding mere increased cost and delay." 876 S.W.2d at 308–09; *e.g., National Indus. Sand Ass'n v. Gibson,* 897 S.W.2d 769, 771, 776 (Tex.1995).

 Even if we were to find an abuse of discretion in this case, we could not find the required irreparable harm or the effective denial of a reasonable opportunity for American to develop the merits of its case. We sympathize with American's attempt to conserve not only its resources but judicial resources as well. But given controlling supreme court precedent, we are constrained to hold that American does not lack an adequate remedy by appeal. Accordingly, we need not address whether the trial court abused its discretion in refusing to stay the case, and we deny mandamus relief on the trial court's order denying a stay.